JOSEPH MOREY, Respondent, *v.* LEHIGH VALLEY RAILROAD COMPANY, Appellant.

Third Department, June 30, 1919.

**Railroads — negligence — contract of employment — evidence.**

In an action against a railroad company for negligence alleged to have resulted in injury to the plaintiff, evidence *held* to establish that at the time of the accident complained of the plaintiff was not an employee of the defendant, but was an employee of another corporation which was erecting the building in which plaintiff was at work when injured, and that, therefore, a verdict against the defendant is against the weight of the evidence.

APPEAL by the defendant, Lehigh Valley Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Chemung on the 27th day of March, 1918, upon the verdict of a jury for $9,000, and also from an order entered in said clerk's office on or about the same day denying defendant's motion for a new trial made upon the minutes.

*Cobb, Cobb, McAllister, Feinberg & Heath* [*Riley H. Heath* of counsel], for the appellant.

*Charles C. Annabel,* for the respondent.

H. T. KELLOGG, J.:

The question presented upon this appeal is whether the plaintiff, at the time of the accident complained of, was an employee of the defendant, the Lehigh Valley Railroad Company, or an employee of the Farmers' Dairy Company, a corporation which was erecting the building in which the plaintiff was at work when injured. This question was not presented upon the former appeal in this action, the decision upon which is reported in 175 Appellate Division, 756.

From the 2d day of June, 1915, to the 14th day of June, 1915, the plaintiff was a member of a carpenter's gang of five which performed work for the defendant, under the super-

intendence of a foreman named Davis. This gang moved about from place to place on the railroad of the defendant, unloading ties, repairing coal trestles, planking bridges and doing other odd jobs. Its members were employed for no specified time, were paid on an hourly basis, and could be laid off at will. They made their headquarters at Towanda, Penn., where they kept their tools and where the plaintiff lived. On the 14th day of June, 1915, the gang was at work on a coal trestle at Tunkhannock, Penn., which was about fifty miles south of Towanda. On that day, according to the testimony of Davis, Coolbaugh, Chapman and Mitchell, constituting all the members of the gang except the plaintiff, its members were told by Davis that their work for the defendant would end that night, and that they would be laid off. According to Davis, Chapman and Mitchell, they were also told that all of them, except the plaintiff, might go to work on the following day for a Mr. Carpenter, president of the Farmers' Dairy Company, which was building a milk station alongside the tracks of the defendant at Meshoppen, a station midway between Tunkhannock and Towanda. These men had, in the previous March, worked for Mr. Carpenter in the construction of the milk station, and been paid by him for their work. It appears to be undisputed that when railroad work was slack, or appropriations therefor ran out, the carpenters, in charge of Davis, had frequently gone to work for other employers than the defendant at various points along the railroad. Davis stated that on June fourteenth he told the men other than the plaintiff to leave their tools off at Meshoppen on their way to Towanda that night. The plaintiff denied that he was told by Davis that he was laid off. Nevertheless, it does appear that on his journey home he took with him all his tools. It also appears that on the following morning he turned up at the station at Towanda without his tools and without his dinner pail. The witness Johnson, general foreman of carpenters, testified that at the Towanda station that morning he saw the plaintiff and told him that if he cared to go with the boys to Meshoppen and work on Mr. Carpenter's creamery he might do so; that he would not be working for the defendant; that the plaintiff replied that he hadn't any dinner pail, to which Johnson answered that he

could get his dinner at a restaurant. The plaintiff denied that the terms of the conversation were precisely as stated by Johnson, but in effect admitted the substance of the talk, for he stated that Johnson said, "Slip over and get your tools and. go with the boys." As a result of the conversation between Johnson and the plaintiff, the latter went that morning to the creamery at Meshoppen, and, while at work therein, fell from a scaffolding and was injured. It is not disputed that all the members of the gang at work at Meshoppen were paid by Mr. Carpenter, acting for the Farmers' Dairy Company. The proof was overwhelming that the plaintiff was laid off and discharged by the defendant on June 14, 1915. His own conduct, though not his testimony, corroborated the testimony given to this effect by many witnesses. If the jury found otherwise their conclusion was opposed to the weight of the evidence. If they in fact found that he was discharged there was no proof of a new hiring by the defendant to support their verdict. The general foreman Johnson had neither actual, implied nor apparent authority to employ the plaintiff to do work for the defendant on a creamery not owned and not being erected by it. There is no proof that Johnson had any such authority, or indeed that he made any attempt to exercise it. The verdict of the jury was, therefore, against the weight of the evidence.

The judgment and order are reversed and a new trial granted.

All concurred.

Judgment and order reversed on the law and facts, and new trial granted, with costs to the appellant to abide the event. The court disapproves of the finding that the plaintiff was an employee of the defendant and that the negligence of the defendant caused the injury.